IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:13-CR-286-GBL |
| | ) | |
| QUINTAVIS DEONTE DUMAS, | ) | Trial: September 4, 2013 |
| a.k.a. "Tay," | ) | |
| | ) | Hon. Gerald Bruce Lee |
| KOYA TIFFANY ROOKE, | ) | |
| a.k.a. "KK," | ) | |
| | ) | |
| Defendants. | ) | |

**THE GOVERNMENT'S RESPONSE TO DEFENDANT KOYA ROOKE'S OPPOSITION TO THE GOVERNMENT'S NOTICE OF INTENT TO USE EVIDENCE**

The UNITED STATES OF AMERICA, by its attorneys, Neil H. MacBride, the United States Attorney for the Eastern District of Virginia, Michael J. Frank, Assistant United States Attorney, and C. Alexandria Bogle, Special Assistant United States Attorney, hereby responds to defendant Koya Tiffany Rooke's Opposition to the Government's Notice of Intent to Use Evidence (Doc. #49). The evidence the government seeks to introduce is admissible because it is intrinsic to the charged conduct and is essential to proving the elements of the crimes charged. Alternatively, this evidence is also admissible under Rule 404(b) of the Federal Rules of Evidence. Specifically, this evidence proves the defendants' motive, intent, knowledge, and absence of mistake or accident with respect to the charged conduct.

For these reasons, the government respectfully requests that this Court deny Rooke's attempt to exclude this evidence.

**I.      The Evidence Is Admissible Because It Is Intrinsic to The Charged Conduct**

The Grand Jury has charged the defendant Koya Rooke with Engaging in a Child Exploitation Enterprise, Sex Trafficking of a Child, and Interstate Transportation of a Minor for Purposes of Prostitution with co-defendant Quintavis Davis and others to prostitute girls who were under the age of eighteen years, in addition to women over the age of eighteen years. *See Indictment* ¶ 2. In her Opposition to the Government's Notice, the defendant complains that the evidence the government seeks to introduce is "neither relevant nor intrinsic to the crimes charged." Def. Opp. At 1. The defendant is incorrect. To the contrary, much of the evidence that the defendant argues is irrelevant specifically relates to charged criminal conduct.

Federal Rule of Evidence 402 establishes the background principal that relevant evidence is admissible unless it is barred by a specific provision of federal law. Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

Rule 404(b) has no application to evidence of uncharged conduct that is intrinsic to the crime charged. "Evidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or it [evidence of the charged conduct] is necessary to complete the story of the crime on trial." *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (alteration in original) (internal quotation marks omitted); *see also United States v. Wilson*, 624 F.3d 640, 652 (4th Cir. 2010); *United States v. Higgs*, 353 F.3d 281, 311 (4th Cir. 2003).

As the Fourth Circuit has held, acts are intrinsic when they are "inextricably intertwined or both acts are part of a single criminal episode or other acts were necessary preliminaries to the crime charged." *United States v. Chin,* 83 F.3d 83, 88 (4th Cir. 1996) (internal quotation marks

omitted).  Further, the Fourth Circuit has made clear that evidence is inextricably intertwined "if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offense for which the defendant was indicted." *United States v. Wilson*, 624 F.3d 640, 652 (4th Cir. 2010) (internal citation and quotation marks omitted).  Moreover, evidence is intrinsic to charged conduct "if it is necessary to complete the story of the crime on trial," *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994), or "provides context relevant to the criminal charges." *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) (citation and internal parentheses omitted).

With these guideposts in mind, the evidence the government seeks to present at trial falls squarely within the Fourth Circuit's definition of intrinsic acts.  This evidence will not be admitted to demonstrate Rook's bad character or to suggest that she is a bad person.  Rather, the evidence involves Rooke's conduct in the charged offenses and will be used to prove the elements of the charged offenses beyond a reasonable doubt.  *See Siegel*, 536 F.3d at 316.

> **A.     Evidence that Rooke Rented and Drove Vehicles to Transport Members of the Enterprise, and Underage and Adult Prostitutes**

Evidence that Rooke rented and drove vehicles to transport both members of the enterprise, and underage and adult prostitutes is specifically part of the criminal conduct charged in the Indictment.  *See Indictment ¶* 6 a-b.  To the extent that the defendant is complaining about any evidence being admitted that shows that there were also adult prostitutes being transported in these vehicles, that evidence is intrinsic to the charged conduct as it "forms an integral and natural part of the witness's accounts of the circumstances surrounding the offense for which the defendant was indicted." *See Wilson*, 624 F.3d at 652 (4th Cir. 2010) (internal citation and quotation marks omitted).  At trial, the government intends to call adults who were prostituted by Edwin Barcus (the leader of the Enterprise who has already pleaded guilty) at the same time that

Barcus and the Enterprise prostituted underage victims. The adults who were simultaneously prostituted are expected to testify that they witnessed the defendants transport girls who were prostituted because they (the adults who were prostituted) were also present in these vehicles and were also transported by the defendants. The purpose of this testimony is not to inflame the passions of the jury against the defendants because they transported adults who were prostituted. Indeed, transporting adult prostitutes is far less inflammatory that transporting underage victims. Rather, this evidence is offered to prove the elements of the charged offenses (transportation and harboring of underage victims) and show the jury that the adults who were prostituted were in a position to see first-hand the transportation of the underage girls. Should these adult witnesses not be permitted to explain that they themselves were being prostituted by members of the enterprise, their reason for being present in the cars and at the hotels would confuse the jury. Indeed, the jury would think it highly suspicious and incredible that these women were always present, unless the jury is also informed why these women were always present: they, too, were being prostituted.

> **B. Evidence that Rooke Rented Hotel Rooms Where Underage Girls and Adults were being Prostituted**

Similarly, evidence that the defendant rented hotel rooms where underage girls were being prostituted is specifically part of the charged conduct. *See Indictment* ¶ 6d. The fact that adults were also prostituted, including the defendant herself, by the enterprise is necessary to complete the story of the crime on trial. *See Kennedy*, 32 F.3d at 885. As with the transportation of adults, the adults who were prostituted will also testify that they were prostituted out of rooms rented by the defendants. Again, the purpose of this testimony is not to portray Rooke as a bad person, but to show the jury that the adult witnesses had an excellent vantage point for a reason: they frequently were present at the same hotels (and sometimes the same hotel rooms) as the defendants and the underage victims.

4

### C. Evidence that Rooke Purchased and Distributed Narcotics and Alcohol to the Underage Girls and Adults Who Were Prostituted

Rooke also takes issue with evidence that is she provided narcotics to underage girls and adults who were prostituted by the Enterprise. Again, Rooke providing narcotics to the underage girls who were prostituted is part of the crime charged, since the drugs were used to maintain the girls as prostitutes and numb their sensibilities. It is expected that adults who also were prostituted will testify that they were present when the underage girls received drugs, and that they also received drugs at the same time. The purpose of this testimony that Rooke provided narcotics to adults who were prostituted is to show that Rooke provided narcotics to the underage victims at around the same time that she provided them to the adult witnesses who were prostituted. This further explains to the jury how the adults saw Rooke also provide narcotics to the underage victims.

### D. Involvement with a Firearm Used to Protect the Proceeds of the Enterprise

Rooke also objects to evidence of her involvement with a firearm that was carried and used in furtherance of the Enterprise. This evidence is directly relevant to the charged conduct. *See Indictment* ¶ 6f. Specifically, Quintavis Dumas frequently carried a pistol (which he sometimes allowed Edwin Barcus and Joshua Dumas carry) that was used to guard the money earned by the Enterprise, as well as intimidate the victims. The government expects to elicit testimony at trial that Rooke also handled and hid Dumas's pistol. Her actions were in furtherance of the Enterprise, and thus, are intrinsic to the crimes charged.

### E. "Watching Over" Victims Who were Prostituted

Rooke also objects to any evidence that she "watched over" underage victims who were prostituted by the Enterprise. The government expects to elicit testimony at trial that while the Enterprise prostituted underage girls in Virginia, Edwin Barcus, Jr. and Quintavis Dumas

returned to Atlanta, Georgia, and left Rooke in charge to "watch over," assist and transport underage girls prostituted by the Enterprise. Again, this evidence is relevant and intrinsic to the crimes charged. Still other evidence will show that Rooke advised the underage girls on how to post advertisements on Backpage.com and how to perform commercial sex acts. This evidence, too, is directly relevant and intrinsic to the crimes charged and is not simply designed to paint Rooke as a "bad person."

### F. Rooke Performing Commercial Sex Acts on Customers Along with Others

Rooke also objects to any evidence that she performed sex acts on customers along with others prostituted by the enterprise. The government expects to elicit at trial testimony that the Enterprise would raise funds by having Rooke and underage girls (as well as adults prostituted by the enterprise) perform sex acts with the same customer at the same time. Apparently customers paid more for this, and so it financially benefitted Rooke, Dumas, and the other members of the Enterprise. This evidence is highly relevant and clearly intrinsic to the crime charged: it shows that Rooke and the Enterprise used the underage victims to perform commercial sex acts with paying customers. It also shows that Rooke had personal knowledge that the victims were performing commercial sex acts, because Rooke was with some of the victims when the victims performed some of these commercial sex acts.

### G. Posting Bail for an Adult who was Prostituted by the Enterprise

Rooke also complains about any evidence that she posted bail for an adult who was prostituted by the Enterprise. Specifically, in December 2012, in Fairfax County, Rooke and Quintavis Dumas went to a bail bondsman to post a bond for Devin Lofton, an adult who was also prostituted by the Enterprise. Lofton had been arrested along with the minor victims whom the Enterprise had prostituted in Virginia. The government intends to introduce evidence at trial

6

that, at the time the defendant posted bond for Devin Lofton, she inquired about the underage victims in an attempt to post bond for at least some of them.  This evidence is clearly relevant and intrinsic to the charged conduct.  It shows that Rooke was acting in concert with other members of the Enterprise and that she acted to advance the goals of the Enterprise.  Namely, Rooke worked with Quintavis Dumas and Edwin Barcus to again gain control of the victims and maintain the underage girls who were prostituted by the Enterprise.  The Enterprise could not make money when the underage girls were incarcerated, so it needed to free them.  This conduct is specifically listed as an overt act in the Indictment.  *See Indictment* ¶ 6i.  Accordingly, Rooke has no sound basis to object to this evidence.

## II.　This Evidence Is Also Admissible Under Rule 404(b) to Prove Rooke's Motive, Intent, Knowledge, and Absence of Mistake or Accident

Even if all of this evidence were not intrinsic to the crimes charged, it would still be admissible under Rule 404(b).  Rule 404(b) permits the introduction of "[e]vidence of other crimes, wrongs, or acts…for…purposes[ ] such as proof of motive, opportunity, intent, knowledge, and absence of mistake or accident."  Fed. R. Evid. 404(b).  The evidence at issue here is admissible under Rule 404(b) to prove the defendant's motive, intent, knowledge, and absence of mistake or accident with respect to the charged conduct.

In the Fourth Circuit, evidence is admissible under Rule 404(b) provided it is (1) relevant to an issue other than character, (2) necessary or probative of an essential claim or an element of the crime charged, (3) reliable, and (4) admissible under Rule 403.  *See United States v. Queen*, 132 F.3d 991, 995, 997 (4th Cir. 1997).  It is well-settled that Rule 404(b) is an "inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition."  *United States v. Young,* 248 F.3d 321, 352 (4th Cir. 2010) (citations omitted).

### A. First Prong of the *Queen* Test—Relevance

The Federal Rules of Evidence broadly define "relevant evidence" to include "any evidence which tends to make the existence of a fact or consequence to an issue in the case 'more probable or less probable' than without the evidence." *Queen*, 132 F.3d at 994 (citing Fed. R. Evid. 401 and 402). "Relevance typically presents a low barrier to admissibility." *United States v. Leftenant*, 341 F.3d 991, 998 (4th Cir. 1997). Courts have "broad discretion in evaluating whether evidence is probative, requiring only a 'plus value' to make it admissible." *Queen*, 132F.3d at 998. Relevant evidence does not have to be "strong" or intrinsically persuasive, but "merely...worth consideration by the jury." *Id.* (citation omitted). Additionally, the Fourth Circuit's relevancy requirement involves an analysis of how closely the 404(b) evidence is ties to the charged conduct. "[T]he more similar the prior act is (in terms of physical similarity or mental state) to the act proved, the more relevant it becomes." *Queen*, 132 F.3d at 997.

Under this standard, there is no question that this evidence is relevant and makes the existence of certain facts more likely. This evidence goes directly to defendants' motive, knowledge, intent, and absence of mistake to commit the charged crimes. Evidence that the defendant was herself a prostitute and also was involved in prostituting other adults is probative of her knowledge and intent. This evidence is also relevant to the enterprise's common plan and absence of mistake.

### B. Second Prong of the *Queen* Test—Necessity

Other acts evidence must be "necessary in the sense that it is probative of an essential claim or an element of the offense." *Queen*, 132 F.3d at 997. Evidence is necessary where, in "light of other evidence available to the government...it is an essential part of the crimes on trial,

or where it furnishes part of the context of the crime." *Id*. at 998 (internal citation and quotation marks omitted).

In this case, intent is an essential element of the offenses. "Evidence of other similar crimes is admissible to show intent to commit the crime charged; it is particularly pertinent in Mann Act cases." *United States v. Ratley*, 284 F.2d 553, 554 (2d Cir. 1960). "Obviously the accused will not himself disclose his intent. Hence it is well settled that it may be discovered elsewhere, as from evidence of other similar activities of the accused, such as that he has used the same woman, or some other woman, for like improper purposes." *United States v. Pape*, 144 F.2d 778, 781 (2d Cir. 1944). Accordingly, evidence that the defendant was herself a prostitute, participated in commercial sex acts with customers along with the victims, and was involved in transporting adults who were prostituted by the Enterprise, is highly probative of her knowledge and intent.

### C. Third Prong of the *Queen* Test—Reliability

According to *Queen,* other acts evidence must be reliable. The Fourth Circuit has adopted a remarkably broad standard in this regard, stating that "[e]vidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Siegel,* 536 F.3d 306, 319 (4th Cir. 2008) (internal citation and quotation marks omitted). Here, the government's proffered evidence is far from preposterous and easily satisfies *Queen's* broad reliability standard. Specifically, the evidence here will be elicited from various witnesses (whom the defendant will have the opportunity to cross-examine), and business records kept in the ordinary course of the businesses activities.

### D. Fourth Prong of the *Queen* Test--- Federal Rules of Evidence 403

The final prong of *Queen* involves application of the standard Rule 403 balancing test. Under Rule 403, evidence that is otherwise admissible "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; see also *Queen*, 132 F.3d at 997 ("[T]he evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the fact finding process.").

Significantly, Rule 403 "only requires suppression of evidence that results in unfair prejudice–prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice substantially outweighs the probative value of the evidence." *United States v. Mohr*, 318 F.3d 613, 619-20 (4th Cir. 2003) (internal citation and quotation marks omitted). "Indeed, out adversial system depends on opposing parties offering evidence that will strengthen their respective positions and damage that of their opponents." *Id.*

In this case, the evidence the government seeks to introduce easily meets this standard. Disclosing the fact that adults were also being prostituted by the enterprise and that the girls and women were being given drugs and alcohol is not evidence, for example, of conduct so revolting or inflammatory that it would cause an emotional reaction that would render the jurors incapable of judging the facts objectively. For otherwise admissible evidence to be excluded under Rule 403, "the risk that the jury will be excited to irrational behavior [must be] disproportionate to the probative value of the evidence." *United States v. Tedder,* 801 F.2d 1437, 1444 (4th Cir. 1986). This is a difficult standard to meet. *See e.g., United States v. Kelly*, 510 F.3d 433, 436-48 (4th Cir. 2007) (evidence of defendant's conviction for attempted rape of 12-year old 22 years prior

in prosecution for travelling in interstate commerce to engage in illicit sexual conduct); *United States v. Rivera,* 412 F.3d 562, 571 (4th Cir. 2005) (admitting evidence that defendant compared cutting victim's throat after he had begged for his life to "cutting up a chicken"); *United States v. Myers*, 280 F.3d 407, 413-14 (4th Cir. 2002) (admitting "gruesome details" of victim's shooting and death); *United States v. Powers,* 59 F.3d 1460, 1464-68 (4th Cir. 1995) (in case against defendant charged with raping his minor daughter, admission of evidence that he regularly beat his children and wife, "disciplined" his children by forcing them to eat hot peppers, and threatened to burn down their home with his family inside upheld). Here, the probative value of the evidence is high, while the likelihood of confusion or unfair prejudice is low. Moreover, the additional evidence will not unduly prolong the trial.

## III.    Conclusion

For the reasons stated above, the government should be permitted to introduce its noticed evidence at trial.

<div style="margin-left:auto">

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:      /s/
Michael J. Frank
Assistant United States Attorney
C. Alexandria Bogle
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3700
Email:  michael.frank@usdoj.gov
           christine.bogle@usdoj.gov

</div>

# CERTIFICATE OF SERVICE

      I hereby certify that on the 29th day of August, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the counsel of record.

                                                                    /s/
                                            Michael J. Frank
                                            Assistant United States Attorney
                                            United States Attorney's Office
                                            Eastern District of Virginia
                                            2100 Jamieson Avenue
                                            Alexandria, Virginia 22314
                                            Phone: 703-299-3700
                                            Fax: 703-299-3980
                                            Email: christine.bogle@usdoj.gov